# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Vern **Lei**, *and*<br>Ross **Gilson**,<br><br>*Plaintiff(s);*<br><br>*vs.*<br><br>City of **Philadelphia**,<br><br>*Defendant.* | Civil Action<br><br>*No.* _____ |

## COMPLAINT

On Tuesday, June 18th 2024, Mayor Cherelle Parker signed an ordinance that purports to prohibit possession of all 'Rate-of-fire acceleration devices' including both 'auto-sears' and 'bump stocks' within the City, and imposes both civil and criminal penalties.

There are many problems with this ordinance. First, the City of Philadelphia is expressly prohibited from any local regulation on possession of firearms. The Bump Stock Ban is a facial prohibition on possession of firearms with certain features. Second, the Second Amendment of the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution prohibit infringement of the right to keep and bear arms. The Bump Stock Ban infringes on these fundamental and constitutional rights. Finally, the Bump Stock Ban's text is so vaguely drafted that it fails to provide fair notice of what it prohibits. It thereby invites arbitrary enforcement and requires the wholesale exercise of discretion both to determine what items are actually prohibited as well as to whom the law will be enforced upon. As a result, the Bump Stock Ban is unconstitutionally vague.

Therefore, Plaintiffs respectfully request this Court strike down the Bump Stock Ban, enjoin its enforcement, and award attorneys' fees pursuant to 42 U.S.C. § 1983.

# PARTIES

1.  Plaintiff Vern **Lei** is an adult individual and resident of Philadelphia, Pennsylvania.

2.  Plaintiff Ross **Gilson** is an adult individual and resident of Philadelphia, Pennsylvania.

3.  Defendant City of **Philadelphia** is a political subdivision of the Commonwealth of Pennsylvania.

# JURISDICTION & VENUE

4.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (counts # 1–2), 42 U.S.C. § 1343 (a) (count # 1), and *Id*. § 1367 (counts # 3–4).

5.  This Court also has personal jurisdiction over the City of Philadelphia as a political subdivision of the Commonwealth of Pennsylvania.

6.  Venue is proper before this Court under 28 U.S.C. § 1391 (b) because Philadelphia is located within this district.

# LEGAL BACKGROUND

7.  The Philadelphia Code Section 10-2002, as amended by Bill No.  240472 (hereinafter "**Bump Stock Ban**") provides:

> **§ 10-2002.  Restrictions on Possession, Use, Transfer, or Manufacture.**.
>
> (4) No person shall manufacture or otherwise produce a rate-of-fire acceleration device by any means, including via a three-dimensional printer or other additive manufacturing device or process.
>
> (5) No person shall purchase or otherwise take ownership, possess, or sell or otherwise transfer a rate-of-fire acceleration device.
>
> Phila. Code. § 10-820

8.  The Philadelphia Code, as amended by Bill No. 240472, defines 'Rate-of-fire acceleration device' as "A device, such as an auto sear or bump stock, that is designed to accelerate the rate of fire of a semi-automatic firearm."

9.  Bill No. 240472 was adopted into law by the signature of Mayor Cherelle Parker on June 18th 2024.

10. Violations of these provisions carry civil penalties of $ 2,000 *per violation* and for "Repeat Violation[s]" may incur criminal penalties up to 90 days imprisonment *per violation*. *Id*. § 10-2003–2004. The Code also provides for 'stacking' of the offenses, where each regulated item shall be a separate violation of the law, and a person may be found guilty of Repeat Violation on the **first** violation, if multiple regulated items are possessed. *Id*. § 10-2004.

11. 'Rate-of-fire acceleration devices' are legal to own under both federal and Pennsylvania law, notwithstanding Philadelphia's purported Bump Stock Ban.

12. Under the National Firearms Act ('NFA'), possession of an 'auto-sear[s]' is the same as possession of a 'machinegun' or weapon that can fire more than one bullet with a single function of the trigger.

13. Possession of machine guns is also legal under both federal and Pennsylvania law, subject to specific date of manufacture requirements and with a NFA tax stamp with the corollary investigation and approval by the Bureau of Alcohol, Tobacco, and Firearms ('BATF').

## FACTUAL BACKGROUND

14. Plaintiff Lei purchased a bump stock online on June 14th 2024, prior to the enactment of the Bump Stock Ban. His bump stock will be delivered in the near future.

3

15. Plaintiff Gilson lawfully owns a NFA-regulated lower receiver with auto-sear.

16. Both Plaintiffs possess other items which could be construed to be 'Rate-of-fire acceleration devices', however as the items are not enumerated and the law is unclear, Plaintiffs cannot be certain if those items would be prohibited.

17. Plaintiffs wish to continue to lawfully possess items which are defined by the code as a 'Rate-of-fire acceleration device', including bump stocks and auto-sears, as well as the other items which *might* be considered same.

18. Plaintiffs do not wish to comply with the Bump Stock Ban which would dispossess them of these lawfully possessed items; however if they do not comply place themselves at risk of civil penalty and criminal prosecution.

19. Plaintiffs are not otherwise disqualified from owning or possession firearms.

## LEGAL COUNTS

### Count # 1
### Violation of Civil Rights
42 U.S.C. § 1983

20. Plaintiffs incorporates by reference ¶¶ 1–19 above as if fully set forth herein.

21. The Second Amendment of the United State Constitution provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.
>
> U.S. Const. amend. II

22. The Second Amendment is incorporated against the States, including the Commonwealth of Pennsylvania.

23. As a political subdivision of the Commonwealth of Pennsylvania, the City of Philadelphia must obey the Second Amendment.

24. The Second Amendment guarantees the right to bear arms.

25. A 'Rate-of-fire acceleration device' is a functional firearm component, which is protected by the Second Amendment.

26. Philadelphia is explicitly prohibiting these weapons because they are 'arms', and if the 'Rate-of-fire acceleration devices' were not a functional part of a protected 'arm', the City would not be banning it.

27. Upon information and belief, there is no historical tradition of a complete prohibition of the practice of prohibiting 'rate-of-fire acceleration devices' at any relevant period under *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022).

28. The Bump Stock Ban violates the Second Amendment.

29. Section 1983 provides, among other things, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

30. The Bump Stock Ban is a "policy" of the City of the Philadelphia within the meaning of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), as an official enactment of Council.

31. Among other things, Section 1983 permits injunctive relief, declaratory relief, and the award of reasonable attorneys' fees.

Count # 2

**Unconstitutional Vagueness**

U.S. Const. amend. V & amend. XIV

32.  Plaintiffs incorporates by reference ¶¶ 1–19 above as if fully set forth herein.

33.  The Bump Stock Ban prohibits "manufacture or possession" of any "device … that is designed to accelerate the rate of fire of a semi-automatic firearm."

34.  The Bump Stock Ban carries both civil and criminal penalties.

35.  First, the Bump Stock Ban enumerates two examples: an "auto-sear" and a "bump stock".

36.  However, an auto-sear is a fully-automatic machinegun. Therefore, it can never 'accelerate the rate of fire of a semi-automatic firearm', and **could never be** a 'Rate-of-fire acceleration device'.

37.  The term "bump stock" is not defined or explained. However, nearly any semi-automatic weapon with a stock can be 'bump-fired', and therefore nearly any weapon with a stock could be construed as a 'bump stock'. As a result—unless a device is specifically labelled as a 'bump stock'—there is no way to know what features may or may not be allowed, and therefore a person has no way of knowing if any particular stock is a 'bump stock'.

38.  Next, the term 'rate of fire' is nearly meaningless with respect to semi-automatic weapons. Rate of fire is used to describe the cyclical speed of fully-automatic weapons with the trigger held depressed. The rate of fire is a mechanical limitation of a fully-automatic firearm, either by design (to ensure the safe continuous operation of a fully-automatic firearm) or because the physical mechanism of the firearm cannot physically cycle faster.

39. Semi-automatic weapons are not discussed in terms of 'rate of fire', as the weapon fires as quickly as a person can pull the trigger. As semi-automatic weapon fires as quickly as the user can pull the trigger, up to the maximum mechanical speed that the weapon can physically cycle (or an external limitation, such as magazine capacity).

40. If 'rate of fire' were used to describe the operation of a semi-automatic firearm, it would be used to describe the maximum mechanical speed that the semi-automatic mechanism can physically cycle. Neither an 'auto-sear' nor a 'bump-stock' actually change the maximum speed a firearm could cycle, and as such neither can accelerate the rate of fire of a firearm.

41. The 'rate of fire' of a semi-automatic firearm can not be meaningfully changed. Since each shot requires one trigger pull, the speed at which multiple shots are fired from a semi-automatic weapon is controlled by how quickly the user depresses the trigger.

42. Because of this, the plain text of the ordinance does not make sense: the City will be discretionarily deciding if any particular device "is designed to accelerate the rate of fire of a semi-automatic firearm" with unbridled discretion and in a wholly arbitrary manner.

43. As a result, the City could arbitrarily determine many other devices are "designed to accelerate the rate of fire of a semi-automatic firearm." For example, most semi-automatic firearms allow for an aftermarket trigger system which require less pressure for a trigger break (*e.g.* easier to pull). By design, these triggers allow the user to more quickly accurately fire the weapon. Therefore, it is uncertain if every aftermarket trigger is now prohibited within the City of Philadelphia.

44. Finally, the Bump Stock Ban prohibition has **no exclusions** for police, federal law enforcement, or national guard. Upon information and belief, the Philadelphia Police Department possesses a number of now-prohibited devices, including auto-sears (used by their SWAT

team and other special units).  Further, upon information and belief, both numerous federal law enforcement agencies and the Pennsylvania Army National Guard both possess devices prohibited by the Bump Stock Ban within the City limits.

45. It is inconceivable that the Philadelphia Police Department intends to enforce the Bump Stock Ban against its own officers using police-issued equipment.  It is similarly inconceivable that the City of Philadelphia intends to enforce the Bump Stock Ban against federal law enforcement nor the Pennsylvania Army National Guard.  However, that is what the law would demand.

46. A statute is unconstitutionally vague when people of common intelligence must necessary guess at its meaning.

47. No person of common intelligence can understand exactly what the Bump Stock Ban prohibits, much less—and more importantly—what is legal for a gun owner to possess.

48. Every criminal law must give ordinary people fair notice of the conduct it punishes and may not permit arbitrary enforcement.

49. The Bump Stock Ban fails to provide fair notice of the prohibited conduct and invites unbridled and arbitrary discretion to law enforcement and prosecution as to determine what devices might be prohibited.

50. The Bump Stock Ban further requires wholly arbitrary and discretionary enforcement, with the City 'picking and choosing' who would be subject to the ban and would would not be without any clear basis or rationale in the ordinance, which further shows the law is unconstitutionally vague.

51. Therefore, the Bump Stock Ban should be struck as unconstitutionality vague.

Count # 3
## State Unconstitutionality
PA. CONST. art. I, § 21 & art. IX, § 2

52. Plaintiffs incorporates by reference ¶¶ 1–19 above as if fully set forth herein.

53. Article I, Section 21 of the Pennsylvania Constitution provides:

> The right of the citizens to bear arms in defense of themselves and the State shall not be questioned.
>
> U.S. CONST. amend. II

54. The City of Philadelphia is a Home Rule municipality pursuant to Article 9, Section 2 of the Pennsylvania Constitution. As a Home Rule municipality, the City is permitted to "exercise any power or perform any function **not denied by this Constitution**, by its home rule charter, or by the General Assembly at any time." PA. CONST. art. IX, § 2 (emphasis added); *see also* 53 P.S. § 13131.

55. Article I, Section 21 guarantees every citizen's right to bear arms in Pennsylvania.

56. 'Arms' include functional firearms components such as 'auto-sears', 'bump stocks' and other components that may be prohibited by the Bump Stock Ban.

57. The Bump Stock Ban is incompatible with the guarantees of the Pennsylvania Constitution, and therefore is a power denied to the City pursuant to its existence as a Home Rule municipality.

58. Therefore, the Bump Stock Ban is unconstitutional pursuant to both PA. CONST. art. I, § 21 & art. IX, § 2.

Count # 4

## Violation of Pennsylvania Firearms Preemption

18 Pa. C.S. § 6120

59. Plaintiffs incorporates by reference ¶¶ 1–19 above as if fully set forth herein.

60. Pennsylvania explicitly prohibits any municipality from enacted local gun laws:

> No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.
>
> 18 Pa. C.S. § 6120 (a)

61. The purpose of the firearms preemption law in Pennsylvania is to provide for a uniform system of firearms regulation within the state, particularly given the importance of the fundamental and constitutional right to bear arms recognized by both the United States– and Pennsylvania– Constitutions.

62. Philadelphia is a municipality of Pennsylvania and bound by Section 6120 (a).

63. The Bump Stock Ban regulates the lawful possession of a firearm, and as such is prohibited by Section 6120 (a).

64. Pennsylvania's Firearm Preemption Law prohibits the City of Philadelphia from making local regulation of firearms, and therefore the Bump Stock Ban should be struck as unlawful.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs request that this Court declare the Bump Stock Ban unconstitutional, and further permanently enjoin enforcement of the Bump Stock Ban, award reasonable attorneys' fees and court costs, and award any other relief that this Court deems just and proper.

Respectfully Submitted,

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@replev.in

**Auerbach PLLC**
Daniel J. Auerbach (I.D. No. 316856)
241 South 6th Street, # 1902B
Philadelphia, PA 19106
(215) 983-6966
dan@auerbach.llc

*Attorneys for Plaintiffs*

# EXHIBIT A

Bill No. 240472



# City of Philadelphia

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA  19107

**BILL NO. 240472**

---

**Introduced May 16, 2024**

---

**Councilmembers Jones, Lozada, Phillips, Young, Bass, Brooks, Landau, Harrity, O'Rourke, Council President Johnson, Driscoll, Thomas and Squilla**

---

**Referred to the
Committee on Public Safety**

---

**AN ORDINANCE**

Amending Chapter 10-2000 of The Philadelphia Code, entitled "Unlawful Manufacture of Firearms," to add restrictions relating to rate-of-fire acceleration devices, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1. Chapter 10-2000 of The Philadelphia Code is hereby amended to read as follows:

CHAPTER 10-2000. UNLAWFUL MANUFACTURE OF FIREARMS

§ 10-2001. Definitions.

\*      \*      \*

*(11) Rate-of-fire acceleration device. A device, such as an auto sear or bump stock, that is designed to accelerate the rate of fire of a semi-automatic firearm.*

§ 10-2002. Restrictions on Possession, Use, Transfer, or Manufacture.

\*      \*      \*

*(4)        No person shall manufacture or otherwise produce a rate-of-fire acceleration device by any means, including via a three-dimensional printer or other additive manufacturing device or process.*

*(5)  No person shall purchase or otherwise take ownership, possess, or sell or otherwise transfer a rate-of-fire acceleration device.*

---

*City of Philadelphia* - 1 -

Exhibit A                                                      13

# City of Philadelphia

*BILL NO. 240472 continued*

\*      \*      \*

**Explanation:**
*Italics* indicate new matter added.

Exhibit A                                                      14

## VERIFICATION OF ROSS GILSON

    I, Ross Gilson, hereby state that I Plaintiff in this action, and declare as follows: I have reviewed this Motion, and all statements and information contained within are true and correct to the best of my knowledge, information, and belief.  Further, I understand that the statements in this Complaint are subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).


_____

**Ross Gilson**
Plaintiff


DATED: 6-20-24

## VERIFICATION OF VERN LEI

I, Vern Lei, hereby state that I Plaintiff in this action, and declare as follows: I have reviewed this Motion, and all statements and information contained within are true and correct to the best of my knowledge, information, and belief. Further, I understand that the statements in this Complaint are subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

**Vern Lei**
Plaintiff

DATED: 24 JUN 24