# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **VERN LEI and ROSS GILSON,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **v.** | : | **Case Number** |
| | : | **24-2716** |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM

---

CITY OF PHILADELPHIA LAW DEPARTMENT
RENEE GARCIA, CITY SOLICITOR

**LYDIA FURST (PA ID No. 307450)**
Chief Deputy City Solicitor
**BAILEY AXE (PA ID No. 309686)**
Deputy City Solicitor
**MICHAEL PFAUTZ (PA ID No. 325323)**
Deputy City Solicitor
Affirmative & Special Litigation
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

*Counsel for Defendant City of Philadelphia*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

III.    LEGAL STANDARD ......................................................................................... 5

IV.     ARGUMENT ...................................................................................................... 6

      A.      The Switch Ordinance Does Not Infringe Any Right to Bear Arms ...................... 6

            1.      Rate-of-Fire Accelerator Devices Are Not Protected by the Second
                 Amendment and Thus Count I Fails As A Matter Of Law ........................ 6

                  a.      Rate-Of-Fire Accelerator Devices Are Not Bearable Arms
                      That Are Subject to Second Amendment Protection ..................... 8

                  b.      Machineguns And Rate-Of-Fire Accelerator Devices Are
                      Dangerous and Unusual Weapons That Are Not Subject to
                      Second Amendment Protection ..................................................... 10

                  c.      Regulations of Machineguns and Rate-Of-Fire Accelerator
                      Devices Are Consistent With This Nation's Historical
                      Tradition ..................................................................................... 13

            2.      Machineguns and Rate-Of-Fire Accelerator Devices Are Not
                 Protected By the Pennsylvania Constitution and Thus Count III
                 Fails As a Matter of Law ....................................................... 14

      B.      The Switch Ordinance Is Not Vague ................................................... 16

      C.      The Switch Ordinance Is Not Preempted ............................................. 20

V.      CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akins v. United States*,
   312 F. App'x 197 (11th Cir. 2009) ........................................................ 10

*Bevis v. City of Naperville, Illinois*,
   85 F.4th 1175 (7th Cir. 2023) ................................................. 12, 13, 14

*Caba v. Weaknecht*,
   64 A.3d 39 (Pa. Cmwlth. 2013) ......................................................... 15, 16

*Capen v. Campbell*,
   2023 WL 8851005 (D. Mass. Dec. 21, 2023) ........................................ 9, 12

*City of Philadelphia v. Armstrong*,
   271 A.3d 555 (Pa. Cmwlth. 2022) ......................................................... 22

*CMR D.N. Corp. v. City of Philadelphia*,
   703 F.3d 612 (3d Cir. 2013) ................................................................ 16

*Commissioner v. Estate of Bosch*,
   387 U.S. 456 (1951) ........................................................................... 22

*DeWilde v. United States*,
   2023 WL 4884582 (D. Wyo. July 17, 2023) ........................................... 12

*Disabled in Action of Pa. v. SEPTA*,
   539 F.3d 199 (3d Cir. 2008) ................................................................ 22

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ....................................................................Passim

*English v. State*,
   35 Tex. 473 (1871) ............................................................................ 14

*Firearm Owners Against Crime v. City of Pittsburgh*,
   276 A.3d 878 (Pa. Cmwlth. 2022) ......................................................... 22

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ............................................................... 12

*Garland v. Cargill*,
   602 U.S. 406 (2024) ................................................................... 2, 3, 18

*Giaccio v. Pennsylvania.*,
   382 U.S. 399 (1966) ........................................................................... 16

*Gun Owners v. Philadelphia*,
   311 A.3d .................................................................................... 22, 23

*Hamblen v. United States*,
   591 F.3d 471 (6th Cir. 2009) ............................................................... 12

*Hill v. Colorado*,
   530 U.S. 703 (2000) ...................................................................... 16, 20

*Hoffman Mining Co. v. Zoning Hearing Bd. of Adams Twp.*,
   32 A.3d 587 (Pa. 2011) ...................................................................... 22

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................... 16, 17, 19

*Hollis v. Lynch*,

827 F.3d 436 (5th Cir. 2016) ............................................................... 11

*In re Gun Range, LLC,*
311 A.3d 1242 ...................................................................................... 15

*Kost v. Kozakiewicz,*
1 F.3d 176 (3d Cir. 1993) ....................................................................... 5

*Lehman v. Pa. State Police,*
839 A.2d 265 (Pa. 2003) ...................................................................... 15

*Mayer v. Belichick,*
605 F.3d 223 (3d Cir. 2010) ................................................................... 5

*McKenna v. Ortho Pharm. Corp.,*
622 F.2d 657 (3d Cir. 1980) ................................................................. 22

*McKown,*
79 A.3d ................................................................................................ 15

*Morley v. City of Philadelphia Licenses & Inspections Unit,*
844 A.2d 637 (Pa. Cmwlth. 2004) ....................................................... 15

*New York State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022) ............................................................................. 7, 11

*Ocean State Tactical, LLC v. Rhode Island,*
646 F. Supp. 3d 368 (D.R.I. 2022) ........................................................ 9

*O'Neill v. State,*
16 Ala. 65 (1849) ................................................................................ 14

*Ortiz v. Commonwealth,*
681 A.2d 152 (Pa. 1996) ...................................................................... 21

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
998 F.2d 1192 (3d Cir. 1993) ................................................................. 5

*Perry v. State Civil Serv. Comm'n,*
38 A.3d 942 (Pa. Cmwlth. 2011) ......................................................... 15

*Roe v. Dettelbach,*
59 F.4th 255 (7th Cir. 2023) ................................................................... 2

*Rossi v. Commonwealth,*
860 A.2d 64 (Pa. 2004) ....................................................................... 22

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,*
181 F.3d 410 (3d Cir. 1999) ................................................................... 5

*St. Croix Waterway Ass'n v. Meyer,*
178 F.3d 515 (8th Cir. 1999) ................................................................. 5

*State v. Langford,*
10 N.C. 381 (1824) .............................................................................. 14

*State v. Lanier,*
71 N.C. 288 (1874) .............................................................................. 14

*United States v. Alsenat,*
2024 WL 2270209 (S.D. Fla. May 20, 2024) ................................... 9, 10

*United States v. Berger,*
2024 WL 449247 (E.D. Pa. Feb. 6, 2024) .......................... 9, 11, 13, 14

*United States v. Cooperman,*
2023 WL 4762710 (N.D. Ill. July 26, 2023) ........................................ 12

*United States v. Cox,*

906 F.3d 1170 (10th Cir. 2018) ................................................................. 9
*United States v. Fincher*,
538 F.3d 868 (8th Cir. 2008) ................................................................. 12
*United States v. Hammond*,
2022 WL 202435 (E.D. Pa. 2022) ..................................................... 2, 17
*United States v. Hasson*,
2019 WL 4573424 (D. Md Sept. 20, 2019) ......................................... 8, 9
*United States v. Henry*,
688 F.3d 637 (9th Cir. 2012) ............................................................... 11
*United States v. Hernandez*,
2024 WL 964213 (D. Del. 2024) ............................................................ 2
*United States v. Jones*,
2023 WL 8374409 (S.D. Ala. Dec. 3, 2023) ....................................... 12
*United States v. Lane*,
2023 WL 5663084 (E.D. Va. Aug. 31, 2023) ...................................... 12
*United States v. Miller*,
307 U.S. 174 (1939) ...................................................................... 7, 10
*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*,
822 F.3d 136 (3d Cir. 2016) ............................................................... 11
*United States v. Saleem*,
2023 WL 2334417 (W.D.N.C. March 2, 2023) ..................................... 8
*United States v. Zaleski*,
489 F. App'x 474 (2d Cir. 2012) ........................................................ 12

## Statutes

18 U.S.C. § 921 ........................................................................................ 2
18 U.S.C. § 922 .................................................................................... 2, 23
26 U.S.C. § 5845 ............................................................................ 2, 18, 23
1 Pa. C.S § 1922 ...................................................................................... 22
18 Pa. C.S. § 908 ...................................................................................... 2
18 Pa. C.S. § 5515 ................................................................................... 21
18 Pa. C.S. § 6120 .................................................................... 1, 21, 22, 23
34 Pa.C.S. § 102 ....................................................................................... 2

## Regulations

27 C.F.R. § 479.11 .................................................................................. 17
Bump-Stock-Type Devices,
83 Fed. Reg. 13442-01 (proposed March 29, 2018) .............................. 2

I.      **INTRODUCTION**

In June 2024, the City of Philadelphia (the "City" or "Philadelphia") passed a law (the "Switch Ordinance") to prohibit rate-of-fire acceleration devices like bump stocks and auto sears (commonly called "switches"), which are attachments designed to quicken the fire rate of semi-automatic guns. Passed after several high-profile shootings involving devices that effectively turned firearms into fully automatic weapons, the law supports the City's ongoing efforts to reduce the significant gun violence afflicting it and increase safety by protecting the public from the serious dangers of these acceleration devices. Plaintiffs—owners of such devices—seek a declaration from this Court that the Switch Ordinance is invalid and an injunction enjoining its enforcement.

Plaintiffs' suit, untethered from constitutional jurisprudence and the applicable regulatory standards supporting the Switch Ordinance, is baseless. As is explained *infra*, the Complaint is fatally defective as a matter of law on each of the four asserted counts. Neither the Second Amendment nor Pennsylvania's right to bear arms protect automatic weapons or their parts. Nor can Plaintiffs challenge the Switch Ordinance as vague given that they own two of the exact devices named in the Switch Ordinance. And the Switch Ordinance is not preempted under state law because it regulates only attachments to firearms, not firearms themselves. Accordingly, the City requests that the Complaint be dismissed with prejudice.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Under Pennsylvania law, a weapon is a "firearm" if it is "designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." 18 Pa. C.S § 6120(b). A firearm is semi-automatic if it automatically chambers a

---

[1] For purposes of this Motion to Dismiss only, the City takes the facts as pleaded to be true.

new bullet but only fires once each time the trigger is pressed. *See, e.g.*, *Garland v. Cargill*, 602

U.S. 406, 411 (2024); 34 Pa.C.S. § 102; 18 U.S.C. § 921(a)(29). An automatic firearm or

"machinegun" is one that automatically shoots more than one shot, without manual reloading, by

a single function of the trigger. *See, e.g.,* 26 U.S.C. § 5845(b); 18 Pa. C.S. § 908(c). With the

exception of certain firearms manufactured, registered, and taxed before 1986, federal and

Pennsylvania law prohibit the possession of automatic weapons and parts (such as switches) that

allow them to fire automatically. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5845(b);[2] 18 Pa. C.S.

§ 908(a), (b)(1).

     In recent years, Philadelphia and other cities across the country have seen an increase in

violence due to the proliferation of devices that allow criminals to modify semi-automatic

weapons to accelerate their rates of fire to mimic automatic weapons.[3] For semi-automatic

weapons, the rate at which a person can fire depends on how quickly they can repeatedly press

the trigger. A "switch" (sometimes referred to as an auto sear),[4] which can be seen in the images

below, is designed to eliminate this step to enable a semi-automatic gun to fire automatically.

---

[2] Section 5845(b) defines "machinegun" to include both the weapon that fires "automatically" as well as "any part designed . . . for use in converting a weapon" into one that fires automatically. Thus, most if not all switches are already illegal under federal law.

[3] *See, e.g.,* Michael Tanenbaum, *A rise of gun switches in crimes prompts a push for stricter laws against them,* Philly Voice (May 20, 2024), https://www.phillyvoice.com/glock-switch-ban-pennsylvania-law-machine-gun-atf-auto-sear-handgun/; Ken Dilanian, *A tiny and cheap device called a 'Glock switch' lets criminals create their own machineguns,* NBC News (Dec. 6, 2023), https://www.nbcnews.com/politics/justice-department/tiny-cheap-device-called-glock-switch-lets-criminals-create-machine-gu-rcna127265; Bump-Stock-Type Devices, 83 Fed. Reg. 13442-01, 13443 (proposed March 29, 2018).

[4] *See, e.g.*, *United States v. Hammond*, No. 19-00517, 2022 WL 202435, at *1 (E.D. Pa. 2022) (discussing "auto-sears, commonly known as 'trigger switches,' which convert semi-automatic Glock pistols into fully automatic machineguns"); *United States v. Hernandez*, No. 22-122-GBW, 2024 WL 964213, at *1 (D. Del. 2024) ("An auto sear is a device that converts a semi-automatic weapon into a fully automatic weapon."). *See generally Garland v. Cargill*, 602 U.S. 406, 420 n.4 (2024) ("The auto sear catches the hammer as it swings backwards, but will release

 

Similarly, as visible below, bump stocks are designed to allow a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter. *See, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 411–12 & n.1 (2024).



---

it again once a new cartridge is loaded if the trigger is being held back. An auto sear thus permits a shooter to fire multiple shots while engaging the trigger only once." (citation omitted)); *Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir. 2023).

[5] Julia Rothman and Shaina Feinberg, *This $20 Device Turns a Handgun Into an Automatic Weapon*, N.Y. Times (July 1, 2022), https://www.nytimes.com/2022/07/01/business/auto-sear-handgun-automatic.html; Chris Hrapsky, *Glock switch creator would 'rather invent any other thing' in wake of unintended consequences*, KARE11 (Feb. 7, 2024), https://www.kare11.com/article/news/local/kare11-extras/dangers-of-the-controversial-glock-switch-as-told-by-its-inventor/89-9fd2745b-4616-4f8e-b993-3a7249d10f85.

[6] Bureau of Alcohol, Tobacco, Firearms & Explosives, *Bump Stocks* (June 27, 2024), https://www.atf.gov/rules-and-regulations/bump-stocks.

Both switches and bump stocks allow shooters to fire semi-automatic weapons faster, potentially by 50 to 100%.[7]

In response to this ongoing violence, on June 6, 2024, Philadelphia's City Council passed Bill No. 240472 (the "Switch Ordinance"), which amended Chapter 10-2000 of The Philadelphia Code, "Unlawful Manufacture of Firearms," to "add restrictions relating to rate-of-fire acceleration devices, all under certain terms and conditions." (*See* Complaint ("Compl."), Ex. A.) Specifically, the Switch Ordinance prohibits ownership, sale, possession, transfer, manufacture, and production of a "rate-of-fire acceleration device," which is defined as "a device, such as an auto sear or bump stock, that is designed to accelerate the rate of fire of a semi-automatic firearm." (*Id.* (amending Phila. Code §§ 10-2001, 10-2002).) On June 18, 2024, Mayor Cherelle Parker signed the Switch Ordinance into law. (*Id.* ¶ 9.)

Shortly after the passage of the Switch Ordinance, Plaintiffs initiated this action on June 20, 2024. Per the Complaint, Plaintiffs either owned or purchased bump stocks, auto sears, and/or other items which "might" be considered rate-of-fire acceleration devices prior to the enactment of the Switch Ordinance. (*Id.* ¶¶ 14, 15.) The Complaint contends that rate-of-fire acceleration devices are legal to own under both federal and Pennsylvania law. (*Id.* ¶ 11.) It further avers that possession of an "auto-sear" is the same as possession of a "machinegun" under the National Firearms Act ("NFA") and that possession of a machinegun is also legal under federal and Pennsylvania law. (*Id.* ¶¶ 12-13.) Plaintiffs request that this Court "strike down the [Switch Ordinance] [and] enjoin its enforcement," alleging that the City is expressly prohibited from any local regulation of the possession of firearms, that the Switch Ordinance

---

[7] *See* Hrapsky, *supra* note 5; *Gun Expert Demonstrates Difference Between Bump Stock Semi-Auto, Full Automatic Weapons*, KRGV5 News (Oct. 3, 2017), https://www.krgv.com/news/gun-expert-demonstrates-difference-between-bump-stock-semi-auto-full-automatic-weapons/.

infringes on rights afforded by the United States and Pennsylvania constitutions, and the text of the Switch Ordinance is so vaguely drafted that it fails to provide notice of what it prohibits. (*Id.* at 1[8].) The City now moves to dismiss the Complaint against it for failure to state a claim.

## III.   <u>LEGAL STANDARD</u>

A complaint fails to state a claim under Rule 12(b)(6) if it does not "contain sufficient factual allegations so as to state a facially plausible claim for relief." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all factual allegations in the complaint as true, [and] construe the complaint in the light favorable to the plaintiff," but "is not required to accept legal conclusions alleged in the complaint." *Id.* at 229. The question is whether the facts alleged, even if true, fail to support the claim. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("[B]ecause the Association's complaint asserted a facial constitutional challenge, the issues presented to the district court were questions of law and the specific facts were not relevant.").

In addition, when deciding a Rule 12(b)(6) motion, the Court is not limited to allegations in the complaint and documents referenced in the complaint. The Court may also consider matters of public record such as legislative history, judicial documents, "and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).  Plaintiffs do not satisfy even these most basic pleading burdens.

---

[8] Citations to docketed filings in this case refer to the ECF pagination.

IV.    <u>**ARGUMENT**</u>

The Complaint is fatally defective on every count.  First, neither the Second Amendment nor Pennsylvania's right to bear arms protect the devices that are the subject of the Switch Ordinance.  They are not "Arms" afforded protection and the regulations at issue withstand scrutiny set forth in Supreme Court precedent.  Second, the vagueness challenge is without merit. The Switch Ordinance expressly bars the exact two devices Plaintiffs allege they own and provides a clear standard to determine which devices are covered. Third, the Switch Ordinance is not preempted by state law.  It clearly does not regulate firearms, but rather only attachments to firearms, which are themselves prohibited under federal law.  The Complaint thus fails and any attempt at amendment will also fail.

**A.    The Switch Ordinance Does Not Infringe Any Right to Bear Arms**

 At Counts I and III, the Complaint avers that the Switch Ordinance infringes on the "fundamental and constitutional right[]" to "keep and bear arms" as provided by the Second Amendment of the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution." (Compl. at 1, ¶¶ 24-28, 55-58). The Complaint contends that rate-of-fire acceleration devices are within the meaning of "arms" and consequently afforded protection under these provisions. (*Id.* ¶¶ 25, 56.) Relevant case law holds to the contrary, warranting dismissal of these claims.

**1.    Rate-of-Fire Accelerator Devices Are Not Protected by the Second Amendment and Thus Count I Fails As A Matter Of Law**

Undercut by decades of precedent, Plaintiffs assert that the rate-of-fire acceleration devices, which they repeatedly represent are akin to the possession of machineguns, are protected by the Second Amendment. (Compl. ¶¶ 12-13, 25). As an initial matter, the City rejects Plaintiffs' characterization as the devices at issue are accessories and thus not bearable "Arms"

within the purview of the Second Amendment. However, even if Plaintiffs' classification was accepted, courts have rejected constitutional challenges to restrictions on civilian ownership of machineguns and uniformly held that they are "dangerous and unusual weapons" not protected by the Second Amendment. The Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008) and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), did not disturb this longstanding precedent, but reinforced it.  The Second Amendment is therefore inapplicable to regulations affecting the ownership of the subject devices under any conception.

To begin, the Second Amendment protects "the right of the people to keep and bear Arms[.]" U.S. Const. amend. II.  However, this right is not absolute.  *Heller*, 554 U.S. at 626.  It does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. Rather, the Second Amendment protects arms that are in "common use," while stopping short of covering "dangerous and unusual weapons." *Id.* (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)).

Assuming a weapon is an "Arm," courts use a two-step analysis to determine whether a regulation withstands Second Amendment scrutiny. *Bruen*, 597 U.S. at 18. First, a court must decide whether the Second Amendment covers the conduct that is being regulated by the statute. *Id.* at 22-24. In this initial inquiry, a court must determine whether the weapon in question is a "bearable arm" that is "in common use today for self-defense." *Id*. at 31-34. If it does, the Court must determine whether the government has shown that "the regulation is consistent with this Nation's historical tradition on firearm regulation." *Id.* at 24-25.  Plaintiffs' claim falters at every turn.

### a. *Rate-Of-Fire Accelerator Devices Are Not Bearable Arms That Are Subject to Second Amendment Protection*

Count I fails at the outset as rate-of-fire acceleration devices are not "Arms" under the Second Amendment.  Rather, they are accessories and therefore fall outside the scope of Second Amendment protection.

As *Heller* explained, the definition of "Arms" in the Second Amendment was no different in the 18th century than it is today.  It is synonymous with weapons. 554 U.S. at 582. In 1773, arms were defined as "weapons of offence, or armour of defence." *Id.* (quoting 1 Dictionary of the English language 106 (4th Ed.)). Then-existing legal dictionaries defined arms as "any thing that a man wears for his defence, or taken into his hands, or useth in wrath to cast at or strike another." *Id.* (quoting 1 A New and Complete Law Dictionary of the English Language (1828) (reprinted 1989). Today, arms are similarly defined as "a means (such as a weapon) of offense or defense." *United States v. Saleem*, 2023 WL 2334417, *8 (W.D.N.C. March 2, 2023) (quoting *Arm*, MERRIAM-WEBSTER)). The most natural reading of the Second Amendment's right to "keep and bear arms" is therefore the right to "have weapons," and particularly to have them for the purpose of confrontation. *Heller*, 554 U.S. at 582, 584; *accord United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, *4 (D. Md Sept. 20, 2019).

Given the above historical definitions, a rate-of-fire acceleration device — purchased, manufactured or possessed by itself — is not an "Arm" protected by the Second Amendment.  A rate-of-fire acceleration device is not a "weapon of offence" or "any thing that a man . . .  useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581.  Rather, it is an accessory that is used to accelerate the rate of fire of a semi-automatic firearm.  As another district court explained in the context of about machinegun conversion devices, "[a rate-of-fire acceleration device] is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence').

Accordingly, it can't be a 'bearable arm' protected by the Second Amendment." *United States v. Alsenat*, No. 0:23-CR-60209, 2024 WL 2270209, at *9 (S.D. Fla. May 20, 2024) (citing *United States v. Cox,* 906 F.3d 1170, 1186 (10th Cir. 2018)).

Accessories, or "accoutrements" to firearms have long been distinguished from "Arms" under the Second Amendment. *Capen v. Campbell*, No. CV 22-11431-FDS, 2023 WL 8851005, at *17 (D. Mass. Dec. 21, 2023) ("[T]here was a clear distinction between 'arms' and 'accoutrements' during the founding and reconstruction eras."). Accessories to firearms fall outside the scope of the Second Amendment because they "generally have no use independent of their attachment to a gun" and cannot be used to "hurt anybody with [them] unless you hit them over the head[.]" *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 387 (D.R.I. 2022) (finding that the plaintiffs did not establish that large capacity magazines ("LCMs") are "Arms" under the Second Amendment because they are merely accessories to firearms); *Alsenat*, 2024 WL 2270209 at *9 (S.D. Fla. May 20, 2024) (determining that machinegun conversion devices ("MCDs") "possessed by itself, is not an 'Arm' under the Second Amendment at all, and thus is not entitled to any Second Amendment protection"); *Hasson*, 2019 WL 4573424 at *4 ("Silencers generally have no use independent of their attachment to a gun. They do not fire bullets on their own and do not contain a slide, trigger, firing pin, cartridge case, barrel, primer, or gunpowder . . . A silencer is not a weapon in and of itself, but simply a 'firearm accessory,' and therefore not a "bearable arm" protected by the Second Amendment."); *United States v. Berger*, No. 5:22-CR-00033, 2024 WL 449247, at *7 (E.D. Pa. Feb. 6, 2024) ("join[ing] the other federal courts to have squarely addressed whether silencers are "Arms" under the Second Amendment in concluding a silencer is not a bearable "Arm" under the Second Amendment because it is merely an accessory which is unnecessary to the essential operation of a firearm").

Just as silencers, MCDs, and LCMs derive their entire purpose from their attachment to a firearm, rate-of-fire acceleration devices also have no independent purpose beyond its attachment and therefore are merely "accessories," or "accoutrements," to firearms, not "Arms" themselves. *Cf. Akins v. United States*, 312 F. App'x 197, 198 (11th Cir. 2009) (describing an "apparatus for accelerating the cyclic firing rate of a semiautomatic firearm[,]" as an "accessory"). As *Alsenat* instructed, "they are not an essential aspect of the functionality of a firearm – they simply convert a firearm into a far more dangerous type." 2024 WL 2270209 at *9.

A rate-of-fire acceleration device is not a bearable "Arm" under the Second Amendment because it is merely an accessory which is unnecessary to the essential operation of a firearm. Accordingly, Count I fails as a matter of law and should be dismissed.

> b. *Machineguns And Rate-Of-Fire Accelerator Devices Are Dangerous and Unusual Weapons That Are Not Subject to Second Amendment Protection*

Even if this Court were to adopt Plaintiffs' characterization of the subject devices as akin to the possession of a machinegun—which it should not—Count I nevertheless fails the first prong of the *Heller/Bruen* test given that they are not in common use for a lawful purposes such as self-defense. Any contrary argument is directly foreclosed by the applicable precedent.

*Heller* and its progeny provide clear guidance on this issue. While *Heller* considered the constitutionality of a ban on handgun possession, it also addressed the Second Amendment's inapplicability to machinegun restrictions. *Heller*, 554 U.S. at 624, 627. *Heller* identified such firearms as "dangerous and unusual weapons" that fall outside the ambit of Second Amendment protections. *Id*. (quoting 4 Blackstone 148-49 (1769)). This discussion expanded on a concept previously articulated in *United States v. Miller*, 307 U.S. 174 (1939), which recognized that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id*. at 625. The *Heller* Court explained that this limitation "accords

with the historical understanding of the scope of the right," because it is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id*. at 625, 627.

Consistent with this observation and applying *Heller*, the Third Circuit has held that machineguns fall squarely into the category of dangerous and unusual weapons that are not protected by the Second Amendment. *See United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machineguns. They are not in common use for lawful purposes."). *Bruen* did nothing to disturb this holding. Instead, *Bruen* reiterated that only regulations that affect conduct covered by the Second Amendment must be consistent with the historical tradition of regulating firearms. *Bruen*, 597 U.S. at 17-18. Conduct involving the possession of dangerous and unusual weapons remains outside the protection of the Second Amendment, as it always has. As such, *Palmetto State's* conclusion that machineguns are not protected by the Second Amendment remains the law of this Circuit.

The Third Circuit is not alone in rejecting challenges in this context. Every court in the country that has considered the issue—both before and after *Bruen*—has uniformly agreed that machineguns are not protected by the Second Amendment. *See Berger*, 2024 WL 449247 at *7 (collecting cases and noting that "all other circuit courts of appeals which have addressed the issue" and even district courts in those circuits which have not addressed the issue "are unanimous in concluding that machineguns are unprotected [by the Second Amendment]"); *see also Hollis v. Lynch*, 827 F.3d 436, 447–51 (5th Cir. 2016) ("Machineguns are dangerous and unusual and therefore not in common use"); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("In short, machineguns are highly 'dangerous and unusual weapons' that are not

'typically possessed by law-abiding citizens for lawful purposes'" and [t]hus, we hold that the Second Amendment does not apply to machineguns"); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("the Second Amendment does not protect [claimant's] personal possession of machineguns"); *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) ("[W]hatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machineguns for personal use"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machineguns are not in common use by law abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use"); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machineguns to be obviously valid"); *see also Capen v. Campbell*, No. 22-11431, 2023 WL 8851005, at *8 (D. Mass. Dec. 21, 2023); *United States v. Jones*, No. 23-cr-126, 2023 WL 8374409, at *7 (S.D. Ala. Dec. 3, 2023); *United States v. Lane*, No. 23CR62, 2023 WL 5663084, at *15-16 (E.D. Va. Aug. 31, 2023); *United States v. Cooperman*, No. 22-CR-146, 2023 WL 4762710, at *3 (N.D. Ill. July 26, 2023); *DeWilde v. United States*, No. 23-CV-00003, 2023 WL 4884582, at *7 (D. Wyo. July 17, 2023)).

This reasoning has also been extended to semi-automatic weapons and devices that convert them to automatic capabilities. Judge Wood's opinion for the Seventh Circuit, joined by Judge Easterbrook, in *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023) is instructive. In undertaking the first prong of the *Heller* analysis, the court was "not persuaded that the [semi-automatic firearm] is materially different from the [machinegun], the latter of which "is not protected by the Second Amendment, and therefore may be regulated or banned." *Id.* at 1196-97. In reaching this conclusion, and as is highly relevant here, the *Bevis* court

observed that "[t]he similarity between the [semiautomatic firearm] and the [machinegun] only increases when we take into account how easy it is to modify the [semi automatic firearm] by adding a "bump stock" . . . or auto-sear to it, thereby making it, in essence, a fully automatic weapon." *Id*. As such, the court concluded semi-automatic weapons (which can be modified by the same devices at issue here) "may be treated in the same manner [as machineguns] without offending the Second Amendment." *Id*. at 1197.  Thus, to the extent that Plaintiffs contend that the subject devices are affixed to a semi-automatic weapon and thus not subject to the litany of caselaw unambiguously determining that Second Amendment protections simply do not extend to machineguns, *Bevis* forecloses such an argument.

In sum, there is not a single case that supports Plaintiffs' position as set forth in the Complaint, the weight of authority is unanimously against them, and their claim is foreclosed by binding Third Circuit precedent. As was stated in *Berger*, an "argument[s] for protection of [plaintiffs'] machineguns fly in the face of *Heller*, *Bruen*, and every other decision that has ever addressed whether the Second Amendment protects an individual's possession of machineguns." *Berger*, 2024 WL 449247, at *11. Accordingly, Count I fails as a matter of law and should be dismissed.

> c.  *Regulations of Machineguns and Rate-Of-Fire Accelerator Devices Are Consistent With This Nation's Historical Tradition*

Count I likewise fails on the second prong of the *Heller/Bruen* test as regulations on the subject devices are consistent with this Nation's historical tradition of firearm regulation. Notably, the *Heller* Court provided a detailed identification of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" citing a dozen historical sources

and treatises[9] to support its conclusion.  *Heller*, 554 U.S. at 627. Machineguns plainly fall into

that category as was cogently explained in *Berger* in a thorough analysis.  2024 WL 449247, at

*11.  The *Bevis* court undertook a similar assessment, finding a "long-standing tradition of

regulating the especially dangerous weapons of the time, whether they were firearms, explosives,

Bowie knives, or other like devices." 85 F.4th. at 1199-1202.  The court thus held that the bans at

issue involving semiautomatic weapons "respect[ed] and rel[ied] on" what the court deemed "a

long tradition, unchanged from the time when the Second Amendment was added to the

Constitution, supporting a distinction between weapons and accessories designed for military or

law-enforcement use, and weapons designed for personal use." *Id*. at 1202.  The same conclusion

is warranted for the Switch Ordinance given Plaintiffs' own characterization of the subject

devices as set forth in the Complaint and the ample authority determining that such a

characterization does not pass this second prong.  Accordingly, Count I fails as a matter of law

and should be dismissed.

### 2.   Machineguns and Rate-Of-Fire Accelerator Devices Are Not Protected By the Pennsylvania Constitution and Thus Count III Fails As a Matter of Law

Plaintiffs also allege that the Switch Ordinance is "incompatible with the guarantees of

the Pennsylvania Constitution." (Compl. ¶ 57.) Like their Second Amendment claim, this

contention is without merit. Article 1, Section 21 of the Pennsylvania Constitution provides that

---

[9] *See* 4 Blackstone 148-49 (1769); 3 B. Wilson, *Works of the Honourable James Wilson* 79 (1804); J. Dunlap, *The New- York Justice* 8 (1815); C. Humphreys, *A Compendium of the Common Law in Force in Kentucky* 482 (1822); 1 W. Russell, *A Treatise on Crimes and Indictable Misdemeanors* 271-72 (1831); H. Stephen, *Summary of the Criminal Law* 48 (1840); E. Lewis, *An Abridgment of the Criminal Law of the United States* 64 (1847); F. Wharton, *A Treatise on the Criminal Law of the United States* 726 (1852); *State v. Langford,* 10 N.C. 381, 383-84 (1824); *O'Neill v. State,* 16 Ala. 65, 67 (1849); *English v. State,* 35 Tex. 473, 476 (1871); *State v. Lanier,* 71 N.C. 288, 289 (1874).

"[t]he rights of the citizens to bear arms in defense of themselves and the State shall not be questioned." Pa. Const. art. I, § 21. However, contrary to Plaintiffs' representations, Pennsylvania courts examining this provision have consistently held that this right is not absolute. Rather, Pennsylvania appellate authority has routinely observed that "although the right to bear arms is a constitutional right, it is not unlimited, and restrictions are a proper exercise of police power if they are intended to protect society." *Caba v. Weaknecht*, 64 A.3d 39, 50 (Pa. Cmwlth. 2013) (citing *Morley v. City of Philadelphia Licenses & Inspections Unit*, 844 A.2d 637, 641 (Pa. Cmwlth. 2004)); *see also Lehman v. Pa. State Police*, 839 A.2d 265, 273 (Pa. 2003) ("While the right to bear arms enjoys constitutional protection, like many other constitutional rights, it is not beyond regulation."); *Perry v. State Civil Serv. Comm'n*, 38 A.3d 942, 955 (Pa. Cmwlth. 2011) ("[T]he right to bear arms is not unlimited; it may be restricted in the exercise of police power for the good order of society and protection of citizens.").

While guidance in this area is sparse,[10] there is no suggestion from the applicable caselaw that the Pennsylvania Constitution recognizes a more expansive right than the Second Amendment. Indeed, courts considering challenges to government actions brought pursuant to both the Second Amendment and the Pennsylvania Constitution have consistently applied the *Heller* framework. *See In re Gun Range, LLC*, 311 A.3d 1242, 1250 n. 14 (Pa. Cmwlth. 2024) (observing that gun range operator contesting City's zoning decision presented no argument that Pennsylvania provides broader protection than the federal constitution and thus proceeding with a single analysis under *Heller* and *Bruen*); *see also Perry,* 38 A.3d at 954-55; *McKown*, 79 A.3d

---

[10] Jeffrey P. Bauman, The Right to Bear Arms: Article I, Section 21, THE PENNSYLVANIA CONSTITUTION: A TREATISE ON RIGHTS AND LIBERTIES § 24.3 (Ken Gormley & Joy G. McNally eds., 2d ed. 2020) (stating that "[o]nly on rare occasions have the courts of Pennsylvania construed the [state] constitutional provision providing for the right to bear arms.").

at 690; *Caba,* 64 A.3d at 51-52. Any deviation from the standards articulated by *Heller* is unwarranted. Accordingly, Count III fails as a matter of law and should be dismissed.

### B.     The Switch Ordinance Is Not Vague

Plaintiffs raise a vagueness challenge to the Switch Ordinance, but each of their claims fail. First, the Switch Ordinance explicitly prohibits the exact two devices Plaintiffs allege they own, so it is not vague as to them, and they lack standing to raise a broader facial challenge. Second, even facially, the Switch Ordinance is not vague because it provides a clear standard to determine whether a device is covered. And third, because the Switch Ordinance provides a clear standard, there is no risk of arbitrary enforcement.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "That an ordinance may contain some ambiguities does not render it impermissibly vague," *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631-32 (3d Cir. 2013), so long as it does not lack "any legally fixed standards," *Giaccio v. Pennsylvania.*, 382 U.S. 399, 403 (1966).

"To succeed on a facial vagueness challenge, the plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications.'" *Id.* at 632. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733. And "a plaintiff whose [action] is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).

Here, the Switch Ordinance is straightforward. A device is prohibited if (1) by "design[]", it (2) "accelerate[s] the rate of fire" of a (3) "semi-automatic firearm". Phila. Code. § 10-

2001(11). Following this definition, the two common examples of a "bump stock" and an "auto sear" provided by the Switch Ordinance easily fit into this definition. "Switches" and "auto sears" are designed to enable a semiautomatic gun to fire faster; that is they "accelerate[]" the "rate of fire." *See supra* Part II. Similarly, bump stocks are designed to allow a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter. *See id.*

Plaintiffs allege that they own, in their words, a "bump stock" and a gun with an "auto-sear,"[11] respectively. (Compl. ¶¶ 14-15.)  Plaintiffs also admit the Switch Ordinance lists bump stocks and auto sears as examples of prohibited items. Thus, their own pleading shows that it is clear the Switch Ordinance applies to them. Nonetheless, they attempt to introduce confusion to suggest their items are not covered.

First, they claim that there is no such thing as an auto sear because an "auto-sear is a fully automatic machinegun." (Compl. ¶ 36.)  They provide no support for this threadbare allegation, and it is clear from prior criminal prosecutions that "auto-sears, commonly known as 'trigger switches,' which convert semi-automatic Glock pistols into fully automatic machineguns," exist separate and apart from machineguns. *Hammond*, 2022 WL 202435, at *1 (E.D. Pa. 2022); *see also supra* note 4 and accompanying text. At best, this appears to be an implied reference to the federal law's definition of a "machinegun," which defines a machinegun to include both a weapon that shoots "automatically more than one shot, without manual reloading, by a single

---

[11] The Switch Ordinance clearly applies auto sears that increase the rate of fire on a semi-automatic firearm, not components of machineguns, which are automatic weapons. To the extent that Plaintiff Gilson is referring to an internal component of a licensed automatic firearm and not an attachment such as a switch, he lacks standing to challenge the Switch Ordinance. *See, e.g.*, ATF Ruling 81-4, 27 C.F.R. § 479.11.

function of the trigger," as well as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Plaintiffs appear to argue that because, for purposes of federal law, (1) an auto sear is considered a machinegun, (2) a machinegun is an automatic weapon, and (3) that the Switch Ordinance only prohibits rate-of-fire acceleration devices that attach to *semi*-automatic weapons therefore no auto sear can exists because a device cannot be both an automatic weapon and a an attachment to a semi-automatic weapon. But the fact that federal law defines the term "machinegun" broadly to encompass both actual automatic firearms and attachments that allow for automatic firing does not and cannot transform the meaning of a term under the Switch Ordinance which is limited to the device or accessory part that can be attached to a "semi-automatic firearm."

Plaintiffs allege that any semi-automatic weapon with a stock (the back of a rifle) can be "bump fired" and therefore any weapon with a stock could be considered a "bump stock" under the Switch Ordinance. (Compl. ¶ 37.) But "bump firing" (a verb) is not the same as a "bump stock" (a noun) and the Switch Ordinance regulates devices designed with a specific purpose, not firing techniques. Bump firing is a technique by which a shooter harnesses the recoil energy of a semi- automatic firearm so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter, in order to allow the firearm to shoot more than one shot with a single pull of the trigger, *i.e.*, faster. *See, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 411 (2024). "Although bump firing does not require any additional equipment, there are accessories designed to make the technique easier. A 'bump stock' is one such accessory." *Id.* The Switch Ordinance applies to devices that are designed to increase the rate of fire of a semi-automatic

weapon, and not to semi-automatic firearms that are not equipped with such devices but are capable of being "bump fired."

Because Plaintiffs allege that they possess the exemplary devices specifically prohibited the Switch Ordinance—a "bump stock" and an "auto-sear," respectively, (Compl. ¶¶ 14, 15)—their conduct is "clearly proscribed" and they "cannot raise a successful vagueness claim." *Holder*, 561 U.S. at 20. That is the end of this Court's vagueness inquiry.

Despite lacking standing, Plaintiffs also attempt to mount a facial vagueness challenge by taking issue with the Switch Ordinance's "rate of fire" language. Plaintiffs suggest the term is "meaningless" by claiming that it necessarily refers to the "maximum mechanical speed that the weapon can physically cycle," rather than "the speed at which multiple shots are fired" based on "how quickly the user depresses the trigger." (Compl. ¶¶ 38-43.) Plaintiffs claim that because bump stocks and switches do not increase a firearm's maximum mechanical speed, there is no such thing as a rate-of-fire acceleration device. But Plaintiffs' proffered analysis runs headlong into the canon against absurdity: they cannot force this Court to choose a nonsensical interpretation of the Switch Ordinance and then complain that it makes no sense. Instead, the vagueness analysis considers whether "people of ordinary intelligence" would understand what conduct is prohibited, and reasonable people do not read statutes to prohibit impossibilities. Rather, Plaintiffs' argument makes clear why the Switch Ordinance's definition applies to devices designed to increase the rate at which a given shooter can fire the weapon, as bump stocks, switches, and auto sears do.

Finally, Plaintiffs allege that the statute will be arbitrarily enforced because they claim other governments, including the City itself, currently have prohibited devices and conclusorily allege this will result in discriminatory enforcement. But that is not the test for enforcement

vagueness; rather, they must show that the law "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. As discussed above, the Switch Ordinance is clear in what it applies to, leaving no room for arbitrary enforcement. Plaintiffs make no attempt to explain how the City could weaponize some unnamed ambiguity to exempt certain classes from enforcement; it applies equally to devices owned by private individuals and City employees.[12] And because the Switch Ordinance has not been enforced yet as to anyone, Plaintiffs hypothetical claims are entirely speculative at this point.

At bottom, the Switch Ordinance is not unconstitutionally vague because its defined terms clearly apply to Plaintiffs, because as a result they lack standing to raise a broader facial challenge, and because the language of the Switch Ordinance provides reasonable notice that it prohibits all attachments to semi-automatic firearms that are specifically designed to increase the rate at which the user can fire.  Accordingly, Count II fails as a matter of law and should be dismissed.

### C.      The Switch Ordinance Is Not Preempted

Finally, Plaintiffs allege that the Switch Ordinance is preempted by Section 6120 of Pennsylvania's Uniform Firearms Act (UFA) because it regulates devices that can be attached to firearms. But Section 6120 only limits Philadelphia's ability to regulate legal "firearms"—a defined term in the UFA that is limited to "weapons" that can "expel a projectile"—not accessories and devices that cannot themselves fire bullets. Further, because many rate-of-fire acceleration devices are also illegal under the federal law, Section 6120 specifically permits Philadelphia to regulate those items as well.

---

[12] To the extent the City is prevented from enforcing the Switch Ordinance against other governments for Supremacy Clause reasons, that is the result of our constitutional structure, not any impermissible ambiguity in the Switch Ordinance's language.

Section 6120 states, "No county, municipality or township may in any manner regulate the *lawful* ownership, possession, transfer or transportation of *firearms, ammunition or ammunition components* when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa. C.S. § 6120(a) (emphasis added). It goes on to define a "firearm" as "Any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." *See id.* § 6120(b) (incorporating the definition of "firearm" in 18 Pa. C.S. § 5515(a) except as to air rifles). Thus, by legislative definition, other than ammunition and ammunition components, a municipality is not preempted from regulating even legal items that cannot themselves expel a projectile by the action of an explosive.

The Pennsylvania Supreme Court has only interpreted this provision in one case, *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996). In *Oritz*, three Philadelphia Council members and a number of antiviolence groups and private parties, represented by private counsel, sued the Commonwealth for a declaratory judgment that Section 6120 violated the home rule provisions of the Pennsylvania Constitution and Home Rule Enabling Act such that certain ordinances "bann[ing] assault weapons" were still effective. *See id.* at 154. The plaintiffs conceded that if Section 6120 was valid, the Switch Ordinances would be preempted. *Id.* ("It is undisputed that these ordinances purport to regulate the ownership, use, possession or transfer of certain firearms."). In a relatively brief opinion, the Pennsylvania Supreme Court held that because the Pennsylvania Constitution protected a right to bear arms, Section 6120 concerned an issue of "statewide concern" such that it was a permissible restriction on home rule municipalities. *Id.* at 156.

Pennsylvania's lower appellate courts[13] have also addressed Section 6120, albeit not the specific issue presented here. Most recently, a divided Commonwealth Court held in a suit brought by these Plaintiffs and others that while Section 6120 preempts the field of firearm regulation, the City's prohibition on the manufacture of ghost guns from "unfinished frames and receivers" (defined as *not* firearms) and related manufacturing equipment was not preempted.[14] *Gun Owners of America, Inc. v. City of Philadelphia*, 311 A.3d 72, 83-84 (Pa. Cmwlth. 2024). Specifically, *Gun Owners* ruled that Philadelphia's ordinance was not preempted because it "does not regulate firearms *per se*" because, "[t]o state the obvious, *none* of those parts [unfinished frames or receivers], machinery, or manufacturing processes constitute firearms." *Id.* at 84. Rather, the Court held that the preempted field was "actual firearms." *Id.*

By definition, the Switch Ordinance at issue here is not preempted because it does not regulate "firearms." The Switch Ordinance applies to "devices" that are "designed to accelerate

---

[13] Of course, as this Court knows, these lower court opinions are not binding on this Court as to the meaning of state law. *See, e.g., McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980) ("[D]ecisions of lower state courts . . . should be accorded 'proper regard' of course, but not conclusive effect." (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 471 (1951))).

[14] On several previous occasion, the Commonwealth Court has stated that Section 6120 preempts the field of "firearms regulation.". *See, e.g., City of Philadelphia v. Armstrong*, 271 A.3d 555, 561 (Pa. Cmwlth. 2022); *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878, 890 (Pa. Cmwlth. 2022). *But cf. Hoffman Mining Co. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 593 (Pa. 2011) ("[T]he Pennsylvania Supreme Court has determined that the General Assembly has only evidenced intent to completely preempt local regulation of alcoholic beverages, anthracite strip mining, and banking."). This Court should reject the flawed reasoning in these decisions as they render the state legislature's explicit enumeration of separate topics ("firearms," "ammunition," and "ammunition components") superfluous in contravention of the cannon against superfluidity. *E.g., Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 210 (3d Cir. 2008) ("We assume, for example, that every word in a statute has meaning and avoid interpreting one part of a statute in a manner that renders another part superfluous."); *Rossi v. Commonwealth*, 860 A.2d 64, 66 (Pa. 2004) (citing 1 Pa. C.S § 1922 ("[T]he General Assembly intends the entire statute to be effective and certain.")). But even if field preemption applies, it would be limited to the field of "firearms regulation" and not extend to "parts" and "devices" such as those addressed in the Switch Ordinance. *Cf. Gun Owners v. Philadelphia*, 311 A.3d at 83-84.

the rate of fire of a semi-automatic firearm," such as a switch or bump stock; it does not apply to firearms themselves. Phila. Code § 10-2001(11). It prohibits both manufacture and possession of these devices. *Id.* § 10-2002(4)-(5). Based on the use of auto sears and bump stocks as examples, it is clear the Switch Ordinance applies to attachments to firearms that modify a semi-automatic firearm's functionality, rather than part of the firearm itself. Neither an auto sear nor a bump stock is, on its own, capable of "expel[ing] any projectile by the action of an explosive." And as Plaintiffs elsewhere acknowledge, the Switch Ordinance's prohibition on manufacture of these devices is also lawful because prior to manufacture, the devices cannot be considered firearms. *See* ECF No. 5 at 19 (noting Commonwealth Couty found prohibition "manufacture of 'ghost guns'" not preempted (citing *Gun Owners v. Philadelphia*, 311 A.3d at 84)).[15]

Because rate-of-fire acceleration devices are not "firearms," and Section 6120 only applies to "actual firearms," it does not preempt the Switch Ordinance.  Accordingly, Count IV fails as a matter of law and should be dismissed.

## V.     **CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and dismiss Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
RENEE GARCIA, CITY SOLICITOR


Dated: July 12, 2024                    */s/ Bailey Axe*
                                        LYDIA FURST (PA ID No. 307450)

---

[15] The Switch Ordinance is also specifically excepted from Section 6120's reach to the extent it prohibits devices that are also illegal, such as most post-1986 switches, which are prohibited by federal law. *See* 18 U.S.C. § 922(o); 26 U.S.C § 5845(b); 18 Pa. C.S. § 6120(a) (preempting regulation of "*lawful* ownership, possession, transfer or transportation of firearms, ammunition or ammunition components" (emphasis added)).

Chief Deputy City Solicitor
BAILEY AXE (PA ID No. 309686)
Deputy City Solicitor
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5443
bailey.axe@phila.gov

*Counsel for Defendant City of Philadelphia*